ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 23-00119-BLF |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. § 371 – Conspiracy |
| SURYANARAYANA MURTHY BOBBA, | SAN JOSE VENUE |
| Defendant. | |

I N F O R M A T I O N

The United States Attorney charges:

Introductory Allegations

At all times relevant to this Information:

1. The defendant, SURYANARAYANA MURTHY BOBBA, resided in Los Altos, California, in the Northern District of California.

2. The entity identified in this information as "Company-1" was a global leader in industrial automation and digital transformation, which included hardware and software productions, solutions, and services. Company-1's principal executive office was located in Milwaukee, Wisconsin. Company-1 has a large office in San Jose.

3. BOBBA worked for Company-1 at the San Jose office on and off for several years. BOBBA initially was hired by Company-1 as a Software Engineering Manager in 2008. At the time,

INFORMATION

BOBBA was supervised by Kevin Chao.  BOBBA remained at Company-1 until 2013, at which point he left for a role with a different employer.  In 2015, BOBBA rejoined Company-1 and remained employed there until 2020.  Initially, Chao was not BOBBA's supervisor, but the two interacted with each other in the course of their employment.  In approximately summer 2018, BOBBA began reporting to Chao.

4. In addition to working with Chao, BOBBA, during both time periods when he was employed by Company-1, knew and worked with Richard Sze.

5. During their employment with Company-1, BOBBA, Chao, and Sze owed a duty of loyalty to Company-1.  For example, they all reviewed and agreed to be bound by Company-1's policy, that noted that employees "owe a duty of loyalty to the Company which requires that they retain their independence of judgment and avoid circumstances where their personal interest, direct or indirect, may conflict with those of the Company or where their influence in the Company may be used for personal gain to the Company's disadvantage."  They also received periodic training on their duty of loyalty and signed statements acknowledging their understanding of Company-1's policy and their agreement to be bound by it.

The Conspiracy and Its Objects

6. Between in or about 2010 and continuing until in or about December 2019, BOBBA knowingly conspired with Chao, Sze, and others (collectively, the "Target Subjects") to defraud Company-1 by lying about and failing to disclose their control of and financial relationships with certain vendors that provided software development services for Company-1.  The scheme involved the Target Subjects working with or, in some cases, controlling outside vendors who provided services to Company-1.  The Target Subjects knowingly made false material misrepresentations and failed to disclose their control of the vendors and their financial relationships with the vendors despite a duty to do so, and then received money from the vendors.  Over the course of the conspiracy, Company-1 hired vendors based on the Target Subjects' lies and omissions and the co-conspirators pocketed millions of dollars.

7. The Target Subjects conspired and agreed to commit offenses against the United States, specifically, they devised a scheme and artifice to defraud as to a material matter and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and omissions, and to

INFORMATION                                                 2

deprive Company-1 of its intangible right to honest services, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures or sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

The Manner and Means of the Conspiracy

        a)    *Zillsoft*

8. In approximately the beginning to middle of 2010, the Target Subjects discussed controlling an entity that provided software engineering services and having Company-1 hire that entity. The Target Subjects knew, however, that this would violate their duties to Company-1. To hide their affiliation with the outside vendor, the Target Subjects acquired an existing entity, to wit, Zillsoft, Inc., ("Zillsoft") that at the time was a corporate shell. The Target Subjects kept the prior owner of Zillsoft on all public corporate paperwork to conceal their affiliation with the company.

9. Zillsoft entered a vendor contract with Company-1 to provide software consulting services. Unbeknownst to Company-1, the Target Subjects controlled Zillsoft. Company-1 received and paid Zillsoft's invoices. The Target Subjects split Zillsoft's profit. Thirty percent of the profit went to BOBBA, thirty percent went to Sze, and forty percent went to Chao. These profits were funneled from Zillsoft's bank account into a bank account controlled by BOBBA, and then to a bank account controlled by Chao and Sze.

10. In order to conceal their affiliation with Zillsoft, BOBBA, Chao, and Sze made affirmative misstatements and caused others to make affirmative misstatements to make it appear that Zillsoft was a genuine third-party vendor with no improper financial dealings with Company-1 employees. These misstatements gave Zillsoft increased legitimacy as a vendor within Company-1. At no time did BOBBA, Chao, or Sze disclose their control of or financial relationship with Zillsoft to Company-1 despite a duty to do so, nor did they disclose that they were obtaining money and property from Company-1 through materially false and misleading statements made regarding Zillsoft.

        b)    *Company-2*

11. Towards the end of 2011, BOBBA engineered the sale of Zillsoft to Company-2. Company-2 agreed to pay the Target Subjects a percentage of net receipts paid by Company-1 in

INFORMATION                                  3

exchange for the Target Subjects funneling Company-1's software projects to Company-2. Approximately 20 percent of the overall amount paid by Company-1 to Company-2 was funneled to bank accounts that the Target Subjects controlled.

12. In order to conceal their affiliation with Company-2, BOBBA, Chao, and Sze made affirmative misstatements and caused others to make affirmative misstatements to make it appear that Company-2 was a genuine third-party vendor with no improper financial dealings with Company-1 employees. These misstatements gave Company-2 increased legitimacy as a vendor within Company-1. At no time did BOBBA, Chao, or Sze disclose their financial relationship with Company-2 to Company-1 despite a duty to do so, nor did they disclose that they were obtaining money and property from Company-1 through the false and misleading statements made regarding Company-2.

13. BOBBA'S role and receipt of money based on this scheme continued from approximately the end of 2011 through the spring of 2013 when BOBBA left Company-1 to work at another entity.

c) *Software Program Acquired in 2017*

14. In 2015, BOBBA once more became an employee of Company-1. At that time, he was no longer supervised by Chao, but the two men continued to communicate with each other.

15. In approximately late 2016, as part of his role at Company-1, Chao began looking for data analytics software that Company-1 could purchase. BOBBA identified software that was developed by an Indian company as a potential acquisition ("Software Program").

16. Ultimately, Company-1 bought the Software Program at an inflated price. BOBBA and Chao negotiated a side agreement with a broker facilitating the sale and agreed that they would be paid a portion of the overall sale price. Company-1 paid for the Software Program by wiring money in installments to the broker. The broker then sent BOBBA and Chao's collective share to a bank account controlled by BOBBA and BOBBA sent Chao's share to a bank account that Chao controlled.

17. At no time did BOBBA or Chao disclose their financial relationship to the broker to Company-1 or that they received a significant portion of the amount that Company-1 believed it was paying to the acquire the Software Program.

Overt Acts and Use of Interstate Wires

18. In furtherance of the conspiracy and to affect the objects thereof, in the Northern District

INFORMATION 4

of California and elsewhere, BOBBA, and others committed the following overt acts:

    a)    On or about February 26, 2018, BOBBA caused to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, BOBBA wrote a check from a Bank of America bank account that he controlled ending in -3885 to a Wells Fargo bank account ending in -7097 controlled by Chao in the amount of $33,333.33. The amount consisted of one of several payments from BOBBA to Chao related to the acquisition of the Software Program.

COUNT ONE:    (18 U.S.C. § 371 – Conspiracy)

19.    Paragraphs 1 through 18 this Information are re-alleged and incorporated as if fully set forth here.

20.    Between in or about 2010 and continuing until in or about December 2019, in the Northern District of California and elsewhere, the defendant,

SURYANARAYANA MURTHY BOBBA,

did knowingly and willfully conspire and agree with co-conspirators Kevin Chao and Richard Sze, and others known and unknown to the United States Attorney, to commit offenses against the United States, specifically, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of concealment of material facts, and to deprive Company-1 of its intangible right to honest services, and in executing said scheme caused writings, signs, signals, and sounds to be transmitted by means of wire in interstate commerce, in violation of Title 18, United States Code, Sections 1343 and 1346.

All in violation of Title 18, United States Code, Section 371.

DATED: April 21, 2023

ISMAIL J. RAMSEY
United States Attorney

/s/
LLOYD FARNHAM
CHRIS KALTSAS
SAILAJA M. PAIDIPATY
Assistant United States Attorneys

INFORMATION    5

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☒ INFORMATION   ☐ INDICTMENT   ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location:
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

## OFFENSE CHARGED

18 U.S.C. § 371 – Conspiracy

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:
Maximum term of imprisonment: 5 years
Maximum term of supervised release: 3 years
Maximum fine: $250,000
Mandatory Special Assessment: $100
Restitution

## DEFENDANT - U.S

► SURYANARAYANA MURTHY BOBBA

DISTRICT COURT NUMBER

**CR 23-00119-BLF**

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
FBI (SA Francesca Cheli)

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: **ISMAIL J. RAMSEY**

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): **CHRIS KALTSAS**

## DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ►
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No
If "Yes" give date filed

**DATE OF ARREST** ► Month/Day/Year

Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ► Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

Date/Time:   Before Judge:

Comments: